IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY SEWELL,<br>    Plaintiff, | :<br>:<br>: | |
| v. | : | CIVIL ACTION NO. 21-CV-4942 |
| CITY OF PHILADELPHIA, *et al.*,<br>    Defendants. | :<br>:<br>: | |

**MEMORANDUM**

**McHUGH, J.**                                                                                              **JANUARY 3, 2022**

Plaintiff Gregory Sewell, a prisoner currently incarcerated at the Philadelphia Detention Center, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, raising constitutional claims based on the conditions within the Philadelphia Prison System ("PPS"). He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Sewell leave to proceed *in forma pauperis*, dismiss his Complaint, and give Sewell an opportunity to file an amended complaint.

**I.    FACTUAL ALLEGATIONS**

The Complaint identifies the following Defendants: (1) the City of Philadelphia; (2) Commissioner Blanche Carney; (3) a John Doe Warden; and (4) a John Doe Lieutenant. (ECF No. 1 at 1.)[1] The factual allegations of the Complaint are sparse. Sewell alleges that:

> while at PPS [he] experienced extended locked down periods [and was] denied access to showers, phones[.] On August 25th [Sewell] was severely bitten by bed bugs and denied showers for 48 hrs. [He] experienced and witnessed abuse of power.

(*Id.* at 3.) Sewell notes that "at some point" he was transferred to the Detention Center, where he is currently incarcerated. (*Id.*) It appears that he was previous confined at the Curran-Fromhold

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

1

Correctional Facility ("CFCF") at 7901 State Road in Philadelphia. (*Id.* at 1.) It is unclear whether the conditions at issue in the Complaint reflect conditions at CFCF, the Detention Center, or both facilities. Based on these allegations, Sewell brings constitutional claims pursuant to § 1983. He primarily seeks damages in the amount of $10,000 per day.[2] (*Id.* at 3.)

## II.     STANDARD OF REVIEW

The Court grants Sewell leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's]

---

[2] Sewell also seeks "an order declaring that the defendants have acted in violation of the United States Constitution." (ECF No. 1 at 3.) However, declaratory relief is unavailable to adjudicate past conduct, so Sewell's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). The Complaint also alludes to injunctive relief but makes no specific request for such relief, and it is not clear that Sewell is still being subjected to the conditions in question such that an injunction would be warranted. (ECF No. 1 at 2.)

[3] However, as Sewell is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Sewell is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). It appears that Sewell is incarcerated as a pretrial detainee in connection with criminal charges that are pending against him. *See Commonwealth v. Sewell*, CP-51-CR-0007069-2021 (Phila. C.P.) Accordingly, the Fourteenth Amendment, rather than the Eighth Amendment, governs his claims. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). These claims are best construed as asserting that the conditions in which Sewell was confined amounted to unconstitutional punishment in violation of the Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (explaining that pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious' and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To satisfy the subjective component, a

3

prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 303-04; *Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). The subjective component is also met where a detainee alleges an express intent to punish or when a restriction or condition is not rationally related to a legitimate governmental objective or is excessive. *See Stevenson*, 495 F.3d at 68; *see also Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). In assessing whether a detainee's conditions of confinement amount to punishment, courts should consider the totality of the circumstances, while keeping in mind that conditions generally do not violate the Constitution unless inmates are required to endure "genuine privations and hardship over an extended period of time." *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (internal quotations omitted); *see also Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (explaining that "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards[]" since "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months").

Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable under § 1983. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution"). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* To state a claim for municipal liability against a municipal entity, a plaintiff must allege that the municipality's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

      Here, Sewell has neither alleged a plausible basis for a constitutional violation nor a basis for each Defendant's liability. Sewell has not plausibly alleged that the conditions in which he was confined were unconstitutional in large part because his allegations are vague and generalized. Since his allegations are unclear, it is difficult for the Court to understand what happened to him and the factual contours of his claims. Sewell alleges that he experienced "extended locked down periods" during which he was denied access to showers and phones. (ECF No. 1 at 3.) However, he does not provide any factual allegations about the duration of the lock downs, the circumstances under which the lock downs occurred, what activity (if any) was

5

prohibited during these periods, or how, if at all, the lock downs caused him harm or denied him basic needs. Absent these additional allegations, Sewell's bare assertion about "extended lock down periods" is insufficient to plausibly allege that he was subjected to unconstitutional conditions. *See Stokes v. Carney*, Civ. A. No. 21-1435, 2021 WL 4477185, at *8 (E.D. Pa. Sept. 29, 2021) (plaintiffs failed to state a claim based on conditions where "[t]hey have not alleged sufficient facts about the extent, duration, and effect of those conditions from which this Court could infer that the challenged conditions were objectively serious, such that inmates housed on A-1-3 were deprived of a basic human need or that their health or safety was at risk").

The only specific allegations Sewell raises are that he was "severely bitten by bed bugs" on one day in August and that he was "denied showers for 48 hrs." (ECF No. 1 at 3.) The denial of showers for two days does not constitute the type of serious deprivation that amounts to a constitutional violation. *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Coleman v. Hodges*, Civ. A. No. 18-1152, 2018 WL 6618459, at *8 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("[B]eing denied a shower for four days does not constitute a serious enough deprivation of sufficient duration to establish a constitutional violation") (citing cases); *Barndt v. Wenerowicz*, Civ. A. No. 15-2729, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016), *aff'd,* 698 F. App'x 673 (3d Cir. 2017) (denial of showers and out of cell exercise for twenty-eight days did not violate Eighth Amendment when plaintiff did not suffer ill effects and had access to running water in his

cell); *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 738 (W.D.N.Y. 2015) ("To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail.  Even a two-week suspension of shower privileges does not constitute a denial of 'basic hygienic needs.'" (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003)).  Although it is possible that additional allegations about the bed bugs could establish an objectively serious conditions, here, Sewell has alleged only that he was bitten by bed bugs on one occasion.  He has provided no other information about the bed bugs or how the issue was addressed.  Accordingly, his allegations as pled do not support a plausible constitutional violation.  *See Heredia v. Camden Cty. Jail*, Civ. A. No. 16-8633, 2017 WL 2829615, at *2 (D.N.J. June 29, 2017) (complaint alleging overcrowding and unsanitary conditions, which contained a reference to "bed bugs bites," did not state a claim:  "Even accepting these statements as true for screening purposes only, there is not enough factual support for the Court to infer a constitutional violation has occurred"); *Gosciak v. Main*, Civ. A. No. 10-5822, 2011 WL 2491348, at *6 (D.N.J. June 21, 2011) (noting, in dismissing complaint based on bed bug infestation upon screening, that "'[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation'" (quoting *Chavis v. Fairman*, No. 94-1503 1995 WL 156599 at *4 (7th Cir. Apr. 6, 1995)) (alteration in original)).

      Sewell's claims also fail for the separate reason that he has not adequately alleged how any of the Defendants were personally responsible for the challenged conditions such that they could be held liable for the alleged violation of his rights.  It is not clear how, if at all, the John Doe Lieutenant was involved.  Liberally construing the Complaint, it appears Sewell may be

7

alleging that Commissioner Carney and Warden John Doe are responsible for the claimed constitutional violations because they are generally responsible for managing the correctional facilities in the City.  However, a Warden or other high-level official cannot be held liable "simply because of [their] position as the head of the [agency]." *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  Sewell has also failed to state a plausible claim against the City of Philadelphia, because he does not allege that any of the conditions in question stemmed from a specific municipal policy or custom.  In sum, he has failed to allege that any of the named Defendants violated his constitutional rights.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Sewell leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The dismissal is without prejudice to Sewell filing an amended complaint in the event he can allege additional information to state a plausible constitutional claim or claims.  An appropriate Order follows, which provides further instruction as to amendment.

              **BY THE COURT:**

               **/s/ Gerald A. McHugh**

              **GERALD A. McHUGH, J.**